UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MYRA SUGIYAMA,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,

    Defendants.

Case No. 16-cv-05032-PJH

**ORDER DENYING PLAINTIFF'S MOTION TO LIMIT SCOPE OF THE ADMINISTRATIVE RECORD**

Re: Dkt. No. 31

Before the court is plaintiff's motion to determine the scope of the administrative record. Dkt. 31. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

**A.   Procedural History**

This is an ERISA matter in which Myra Sugiyama has sued Unum Life Insurance Company ("Unum") and the Cooley LLP Health and Welfare Plan. Sugiyama seeks $550,000 in accidental death and dismemberment ("AD&D") benefits under a policy issued to her brother John Paul Sugiyama through his employer Cooley LLP ("Cooley"). Dkt. 1.

The instant motion concerns the scope of the administrative record. Plaintiff argues that because Unum missed a deadline in its response to her claim, the administrative record was closed as of April 25, 2016—the date that Unum's response was allegedly due. In plaintiff's view, whether the AD&D benefits were properly denied must be determined on the basis of the record as it existed on April 25, 2016.

Unum maintains that its claim determination was timely because it notified plaintiff of an extension of time on May 2, 2016. On June 2, 2016, Unum denied plaintiff's claim

1  for benefits, relying on a report from the California Highway Patrol ("CHP") that Mr.
2  Sugiyama was driving while intoxicated at the time of the car collision that led to his
3  death. (Mr. Sugiyama survived that collision, but was fatally struck by a car after exiting
4  his vehicle.) In Unum's view, Mr. Sugiyama's death was not covered because of
5  exclusions for losses "resulting from" intoxication or the commission of a crime.

**B.    Unum's Processing of Plaintiff's Claim**

Plaintiff's claim was hand delivered to Cooley on January 26, 2016. Curry Decl. Ex. F; Tracie Sugiyama Decl. ¶¶ 2–3. Cooley completed the form and sent the claim packet to Unum, which received it on February 4, 2016. Curry Decl. Ex. G–I. On February 5, 2016, Unum issued a letter to plaintiff acknowledging its receipt of the claim. Huffman Decl. Ex. A at 61–63. On March 7 2016, Unum sent plaintiff a letter informing her that it was "waiting" on "[p]olice and medical examiner reports" before it could make a claim decision. Huffman Decl. Ex. A at 185.

On April 27, 2016, Unum sent a letter to the CHP requesting the accident report. On May 2, 2016, Unum sent a letter to plaintiff's counsel extending its response deadline an additional 90 days—which is permitted if "special circumstances" warrant—because Unum was waiting to receive the CHP report and the report from the Alameda County Coroner & Medical Examiner's ("ME") office. Curry Decl. Ex. K (the "May 2 Letter"). On May 20, 2016, Unum formally requested the ME report. Curry Decl. Ex. L. On June 2, 2016, Unum denied plaintiff's claim for AD&D benefits based on the CHP and ME reports. Curry Decl. ¶ 9. Plaintiff sued in this court on August 31, 2016. Dkt. 1.

**DISCUSSION**

**A.    Legal Standard**

The parties do not address the appropriate standard to be applied to this motion. Effectively, plaintiff seeks partial summary judgment on the scope of the administrative record. The court will therefore apply Rule 56 standards.

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there

2

is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id. When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105–06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324–25 (moving party can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

3

**B. Analysis**

Plaintiff's motion asserts two bases for limiting the administrative record. First, plaintiff claims that Unum made "misrepresentations" to her as to the time that it requested the CHP and ME reports. Second, plaintiff claims that Unum's May 2 letter, which notified plaintiff of a 90-day extension of the time to make a claim decision, was untimely.

For the reasons explained below, the court concludes that first basis fails because the full record does not show any misrepresentations by Unum.

On the second issue, the crux of the parties' dispute is the when 90-day period to make a claim decision begins to run under 29 C.F.R. § 2560.503-1(f). Plaintiff argues that the 90-day period started on January 26, 2016, the date that Cooley received her claim. Unum argues that the 90-day period began on the date that Unum received the claim, February 4, 2016. The court finds that the ERISA regulations are ambiguous on this point, and will therefore assume, for purposes of this motion, that the May 2 letter was untimely. However, even assuming that the May 2 letter was seven days late, this procedural violation would not justify any substantive relief, let alone the rather extraordinary relief sought by plaintiff.

**1. Whether Unum Made "Misrepresentations" to Plaintiff**

Plaintiff accuses Unum of lying to her about the time that it requested the CHP and ME reports. In its letters and a phone call to plaintiff's counsel, Unum represented that it had sought these reports as early as February. Curry Decl. ¶ 6. However, plaintiff asserts that Unum did not request the CHP report until April 27, 2016, and did not request the ME report until May 20—weeks after the May 2 letter was sent.

Plaintiff's accusation that Unum made misrepresentations appears to be based on an incomplete version of Unum's file. Plaintiff's counsel has averred that the file she received from Unum in July 2016 did not include any "Activity" notes. Supp. Curry Decl. ¶ 4. These notes chronicle Unum's efforts to obtain the CHP and ME reports in February, March, and April 2016. If all plaintiff's counsel saw in the file was Unum's

4

formal letter requests for the reports, it is understandable how she got the impression that Unum was not diligent in seeking the reports.

Nonetheless, in light of the complete record that Unum has now produced, plaintiff's allegation that "Unum lied" to her is unsupported. The full record reveals that on February 8, 2016—days after receiving the claim—Alice Huffman, Unum's claims adjuster, called the Alameda County Coroner/ME and the CHP to obtain the car accident and toxicology reports. Huffman Decl. Ex. A at 174. According to her notes, Huffman was told that she would have to "wait until the case is closed before sending in a request [for the reports]." Id. On March 4, plaintiff was informed by telephone that Unum was waiting for the reports before making a claim decision. Id. at 176. On March 7, plaintiff was sent a letter explaining the reason for the delay. Id. at 185. Huffman sought the reports again on March 8, March 23, and April 6; each time, she was informed that they were not ready yet. Id. at 208.

Once the reports were available, Unum sought them immediately. Unum was advised that the CHP report was available on April 26, 2016; Unum formally requested the report the next day. Id. at 230, 239–40. Unum was advised that the ME report from the Alameda County Coroner was available on May 19, 2016; Unum sought it the next day. Id. at 285, 288–89.

Because Unum sought the reports informally in February, March, and April 2016, plaintiffs' assertion that Unum breached its fiduciary duties by making misrepresentations is not supported by the record. As a result, this does not provide a basis for limiting the contents of the administrative record, the equitable remedy that plaintiff seeks.

**2. Whether Unum's May 2 Letter Was Timely**

ERISA creates an obligation that every plan "shall establish and maintain reasonable procedures governing the filing of benefit claims [and] notification of benefit determination." 29 C.F.R. § 2560.503-1(b). This includes the requirement that:

> [I]f a claim is wholly or partially denied, the plan administrator shall notify the claimant . . . within a reasonable period of time, but <u>not later than 90 days after receipt of the claim by the plan</u>, unless the plan administrator

> determines that special circumstances require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period.

Id. § 2560.503-1(f) (emphasis added). The regulations further provide that "the period of time within which a benefit determination is required to be made <u>shall begin at the time a claim is filed in accordance with the reasonable procedures of a plan</u>, without regard to whether all the information necessary to make a benefit determination accompanies the filing." Id. § 2560.503-1(f)(4) (emphasis added).

There are thus two disputed issues relevant to the timeliness of the May 2 letter. The first, focused on by the parties, is whether Cooley or Unum should be considered "the plan" under section (f). The second issue is the tension between section (f) and section (f)(4): one section purports to start the clock at the time a claim is received, the other when claim was "filed."

As to the first issue, section (f) is confusingly drafted, as "the plan" typically refers to a document, not a particular entity. The policy here defines the term "plan" as "this Cooley LLP Health and Welfare Plan." Curry Decl. Ex. A at 5. One cannot submit a claim to a policy, however, so section(f) must refer to "the plan" in the sense of the overall employee benefit program. ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . ." 29 U.S.C. § 1002(1). Under the policy's definitions, Cooley is the "Plan Administrator." Curry Decl. Ex. A at 5. Both of these definitions mention the employer, which tends to support plaintiff's interpretation that the 90-day period began when the claim was received by Cooley.

However, Unum's argument is supported by section (f)(4), which states that the 90-day claim determination period "shall begin at the time a claim is filed in accordance with the reasonable procedures of a plan." 29 C.F.R. 2560.503-1(f)(4). If the court looks to when the claim is "filed" under the plan terms, Unum has the better of the argument, because the plan provides that "[t]o complete your claim fling, Unum must receive the claims information it requests from you." Curry Decl. Ex. B at 131.

6

Because the regulations are ambiguous on this issue, the court will assume, for purposes of this motion, that there was a procedural violation. Accepting plaintiff's interpretation of the regulations, "written notice" of the extension in time was due on April 25, 2016, but not sent until May 2, 2016—seven days late. As a result, on April 26, 2016, plaintiff was "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies [at law]." 29 C.F.R. § 2560.503-1(l)(1).

### 3. The Appropriate Remedy for the Presumed Procedural Violation

Even assuming a procedural violation, however, the court finds that there is no basis for the substantive relief sought by plaintiff: a limitation on the scope of the administrative record. Three independent reasons support this conclusion.

First, Unum's minor procedural violation can be excused under the "substantial compliance" doctrine. In the Ninth Circuit, "a decision regarding benefits will not be upset for procedural violations if [the plan] has substantially complied with procedural requirements such that the claimant has 'all the necessary information at a time when the participant still has a meaningful opportunity for appeal and for full and fair review.'" Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1114 (9th Cir. 2003); see also Chuck v. Hewlett-Packard Co., 455 F.3d 1026, 1032 (9th Cir. 2006) ("[S]ubstantial compliance with [29 C.F.R. § 2560.503-1] is sufficient."); Finkelstein v. Guardian Life Ins. Co. of Am., No. C 07-01130 CRB, 2008 WL 8634992, at *4 (N.D. Cal. Nov. 23, 2008) ("The Ninth Circuit does not require strict compliance with ERISA's procedural requirements.").

In this case, plaintiff was notified when her claim was received, and notified of the reason for the delay in Unum's claims decision within the initial 90-day period. See Huffman Decl. Ex. A at 185. Unum's request for an extension of time was justified by the circumstances, and plaintiff was notified in writing of the extension of the time to make a claim decision. This notification, even if it was late, was only seven days late. At no time was plaintiff in the dark about the status of her claim. Once Unum received the CHP and

ME reports, it issued its claim decision within weeks. On these facts, the court finds that Unum substantially complied with the ERISA regulations.

Second, substantive relief based on a procedural violation of ERISA regulations is appropriate only if the violation caused "substantive harm." Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 984 (9th Cir. 2005) ("procedural violations of ERISA's requirements . . . can result in substantive remedies if they caused the beneficiary substantive harm.").[1] "Substantive harm" requires "violations [that] are so flagrant as to alter the substantive relationship between the employer and employee." Id. at 985. In this case, plaintiff makes no allegation that the seven-day delay caused her actual injury. Again, the extension notification was merely one week late, and plaintiff had already been informed in March 2016 of the reason for the delay in the claim decision: namely, that Unum was waiting to receive the CHP and ME reports.

Third, even presuming that there was a procedural violation and that the plaintiff somehow suffered substantive harm from a one-week delay, plaintiff would still not be entitled to the relief that she seeks. It is true that, generally speaking, "the record that was before the administrator furnishes the primary basis for [judicial] review." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999). However, the Ninth Circuit has recognized that district courts have discretionary power to consider evidence not before the administrator "when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan, 46 F.3d 938, 944 (9th Cir. 1995) (quotation omitted). Practically speaking, plaintiff seeks to artificially limit the evidence

---

[1] Plaintiff is correct that Gatti and Chuck were decided under an older version of the ERISA regulations, but this does not mean that these decisions are no longer good law. The Department of Labor's choice not to explicitly adopt a substantial compliance exception in the 2000 regulations does not mean that it overturned, sub silencio, the Ninth Circuit's case law. The pre-2000 regulations—under which Gatti and Chuck were decided—did not have an express "substantial compliance" exception, either. Moreover, it is difficult to see how the amendments could disturb the "substantial harm" rule of Gatti, which speaks not to whether there was a procedural violation, but the appropriate remedy for a violation.

8

based on a one-week delay that caused no actual harm.  This relief would contradict the strong judicial policy in favor of resolving disputes on their merits, not technicalities.  See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court therefore finds that the equities favor considering the full record that Unum relied on to make its June 2, 2016 claim decision, and to the extent necessary, it exercises its discretion to consider that evidence.

In sum, under the ERISA regulations, the remedy for the presumed procedural violation here is relief from the exhaustion requirement.  See 29 C.F.R. § 2560.503-1(l)(1).  No relief beyond that is appropriate because Unum substantially complied with the ERISA regulations, and plaintiff did not suffer any harm from the violation.  The more sweeping relief sought by plaintiff lacks any basis in law and would be inequitable under the circumstances of this case.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to limit the administrative record to materials in the record as of April 25, 2016 is DENIED.  Pursuant to the court's prior orders, the full administrative record shall be filed with the court in accordance with this ruling no later than 30 days from the date of this order.  Dkt. 26.  If the record is identical to Exhibit A to the Huffman Declaration, Unum may simply inform the court of that fact.  Cross motions for summary judgment on the remaining issues shall be filed by May 24, 2017.  Id.

**IT IS SO ORDERED.**

Dated:  April 17, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge